# United States District Court

FILED
JUL 20 2006
CLERK
U. S. DISTRICT COURT
MIDDLE DIST. OF ALA.

_____MIDDLE_____ DISTRICT OF _____ALABAMA_____

UNITED STATES OF AMERICA

v.

OSCAR MARTINEZ-RAMIREZ

**CRIMINAL COMPLAINT**

CASE NUMBER: 1:06mj70-DRB

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about __February 15, 2006__, in __Houston__ county and elsewhere within the __Middle__ District of __Alabama__ defendant(s) did, (Track Statutory Language of Offense)

knowingly and intentionally possess with intent to distribute methamphetamine,
a Schedule II Controlled Substance,

in violation of Title __21__ United States Code, Section(s) __841(a)(1)__. I further state that I am a(n) __DEA Special Agent__ and that this complaint is based on the following facts:
        Official Title

SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED BY REFERENCE

Continued on the attached sheet and made a part hereof:  ☒ Yes  ☐ No

_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

July 20, 2006                                    at        Montgomery, Alabama
Date                                                        City and State

Delores R. Boyd, U. S. Magistrate Judge         _____
Name & Title of Judicial Officer                Signature of Judicial Officer

# **AFFIDAVIT**

I, Devin L. Whittle, Special Agent of the United States Department of Justice, Drug Enforcement Administration (DEA) being duly sworn, depose and state as follows:

1.   Your affiant is a Special Agent with the Drug Enforcement Administration (DEA). I am an investigator or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

2.   I am currently employed with the United States Drug Enforcement Administration (DEA), and have been so employed for the past ten (10) years. I am currently assigned to the New Orleans Division, the Montgomery District Office. Prior to becoming a Special Agent, I was a Montgomery, Alabama, Police Officer for eight (8) years. I have worked exclusively on narcotics investigations for sixteen (16) years. I have investigated criminal violations of the Federal controlled substance laws, including, but not limited to, investigations involving smuggling of controlled substances, distribution of controlled substances in violation of Title 21, United States Code, Section 841; and laundering of the proceeds derived from the sale of

controlled substances.  This affidavit is submitted for the purpose of establishing probable cause for a complaint against Oscar MARTINEZ-RAMIREZ.

3.  On February 15, 2006, your affiant and other agents meet with a confidential source, hereafter referred to as the CS.  Information provided by the CS regarding Oscar MARTINEZ-RAMIREZ and other known drug dealers was verified by your affiant and other agents.  Information provided by the CS has proven reliable and valuable to this investigation.  Your affiant has no reason to believe that the CS has provided any false or misleading information to DEA.  The meeting with the CS was regarding the purchase of methamphetamine from Oscar MARTINEZ-RAMIREZ.

4.  During the meeting, the CS attempted to contact Oscar MARTINEZ-RAMIREZ by cellular telephone.  The CS was unable to contact MARTINEZ-RAMIREZ by telephone.  Agents provided the CS with $1,200.00 of official Government funds to purchase one ounce of methamphetamine from MARTINEZ-RAMIREZ.  The CS attempted to locate MARTINEZ-RAMIREZ at several locations.  Later in the evening, the CS received a cellular telephone call from MARTINEZ-RAMIREZ.  MARTINEZ-RAMIREZ advised the CS to meet him at the Sonic drive-in located across from Flowers Hospital in Dothan, AL.

5. At approximately 10:54 p.m., the CS and surveillance agents arrived at the Sonic on Highway 84 in Dothan, AL. At approximately 11:23 p.m., agents observed a White Ford Mustang arrive at the Sonic restaurant. The White Mustang drove around the restaurant and parked next to the CS vehicle. Agents observed the CS enter the White Ford Mustang. The CS later stated that he/she told Oscar MARTINEZ-RAMIREZ that he/she wanted one ounce of methamphetamine. MARTINEZ-RAMIREZ removed one eight balls of methamphetamine from his pants pocket and gave it to the CS. MARTINEZ-RAMIREZ told the CS that the eight ball of methamphetamine is all he had at the time. The CS gave Oscar $440.00 of Official Government Fund's.

6. The CS departed the Sonic and drove to the meet location in Slocomb, AL. The CS was under constant surveillance during this time. At the meet location, the CS turned the methamphetamine over to agents. The CS turned over $760.00 and the recorder over to agents. Agents searched the CS, his/her driver and the CS vehicle. No contraband was found during the search. The methamphetamine purchased by the CS was submitted to the DEA laboratory by your affiant. The lab determined that the 2.5 grams of suspected methamphetamine was in fact

methamphetamine.

7. On February 17, 2006, your affiant and other agents met with the same confidential and reliable source described above, hereafter referred to as the CS, regarding the purchase of one ounce of methamphetamine from Oscar MARTINEZ-RAMIREZ.

8. At approximately 6:00 p.m., the CS placed a telephone call to the cellular telephone of Oscar MARTINEZ-RAMIREZ. During the conversation, MARTINEZ-RAMIREZ told the CS to come by his house (trailer). Your affiant recorded this conversation and entered it into evidence. Agents provided the CS with $1,400.00 of Official Government Funds to purchase one ounce of methamphetamine. In addition, the CS was provided a tape recorder, a transmitter and a repeater. The CS, the CS's driver and the CS's vehicle were searched and not contraband was found.

9. The CS departed the meet location and rode to MARTINEZ-RAMIREZ's trailer (134 Oak Way in Malvern, AL). The CS was under constant surveillance during this time. At approximately 6:18 p.m., the CS met Oscar MARTINEZ-RAMIREZ in the yard of the trailer and gave him $500.00 for two eight balls of methamphetamine. MARTINEZ-RAMIREZ removed

the two eight balls of methamphetamine from his pants pocket. During the conversation at the trailer, MARTINEZ-RAMIREZ told the CS to come back in one or two hours and he would have two more eight balls of methamphetamine.

10. At approximately 6:28 p.m., the CS departed Oscar MARTINEZ-RAMIREZ's trailer in Malvern, AL and proceeded to the meet location in Slocomb, AL. At the meet location, the CS turned the methamphetamine over to agents. The CS gave $900.00 of buy money and the tape recorder over to agents. The CS, the CS's driver and the CS vehicle were searched for contraband and none was found. The methamphetamine purchased by the CS was submitted to the DEA laboratory by your affiant. The lab determined that the 5.8 grams of suspected methamphetamine was in fact methamphetamine.

11. Later on February 17, 2006, your affiant and other agents again met with the same confidential and reliable source described above, hereafter referred to as the CS, regarding the purchase of one ounce of methamphetamine from Oscar MARTINEZ-RAMIREZ.

12. At approximately 8:00 p.m., agents provided the CS with $1,280.00 of buy money, a recorder and a transmitter.

The CS, the CS's driver and the CS vehicle were searched and no contraband was found. The CS departed the meet location and rode to the trailer of Oscar MARTINEZ-RAMIREZ located at 134 Oak Way in Malvern, AL. The CS was under constant surveillance during this time. At approximately 8:24 p.m., the CS arrived at the trailer. The CS gave MARTINEZ-RAMIREZ $480.00 and MARTINEZ-RAMIREZ gave the CS back $20.00. MARTINEZ-RAMIREZ did not have change for the purchase of Exhibit #43 earlier in the day and MARTINEZ-RAMIREZ owed the CS $20.00. MARTINEZ-RAMIREZ also gave the CS two eight balls of methamphetamine. The CS talked with MARTINEZ-RAMIREZ about making a trip to Atlanta, GA to pick up a load of methamphetamine. The CS departed the trailer and rode to the meet location in Slocomb, AL. The CS was under constant surveillance during this time.

13. At approximately 8:49 p.m., the CS arrived at the meet location. The CS turned over the methamphetamine and $620.00 of buy money to agents. In addition, the CS gave agents the recorder, the transmitter and the repeater. The CS, the CS's driver and the CS vehicle were searched for contraband and none was found. The methamphetamine purchased by the CS was submitted to the DEA laboratory by your affiant. The lab determined that the 6.1 grams of

suspected methamphetamine was in fact methamphetamine.

14. On February 23, 2006, your affiant and other agents met with the same confidential and reliable source described above, hereafter referred to as the CS, regarding the purchase of one ounce of methamphetamine from Oscar MARTINEZ-RAMIREZ.

15. At approximately 8:13 p.m., the CS contacted Oscar MARTINEZ-RAMIREZ by calling him on his cellular telephone. During the conversation, the CS asked MARTINEZ-RAMIREZ if he had a "whole one" (one ounce of methamphetamine) and MARTINEZ-RAMIREZ asked the CS to come to his trailer. This conversation was recorded by your affiant and entered into evidence.

16. The CS was provided $1,500.00 Official Government Funds, a transmitter and a recorded by agents. The CS, the CS's driver and the vehicle used by the CS were searched and no contraband was found. The CS drove to Oscar MARTINEZ-RAMIREZS' trailer located at 134 Oak Way in Malvern, AL (Geneva County). The CS arrived at the buy location at approximately 8:23 p.m. The CS was under constant surveillance from the meet location to the buy location.

17. At the buy location, the CS talked with Oscar MARTINEZ-RAMIREZ. The CS gave MARTINEZ-RAMIREZ $1,300.00 for one ounce of methamphetamine. According to the CS, MARTINEZ-RAMIREZ had a set of scales, but the battery was dead on them. MARTINEZ-RAMIREZ went into the bathroom for a very short time and came out with one ounce of methamphetamine that he gave to the CS. The conversation between the CS and the individuals inside of the trailer was recorded and entered into evidence by your affiant.

18. At approximately 8:54 p.m., the CS departed the buy location and rode to the meet location. The CS was under constant surveillance during this time. At the meet location, the CS turned over the methamphetamine, the transmitter and the recorder to agents. The CS, the CS's driver and the vehicle used by the CS were searched for contraband and none was found. The methamphetamine purchased by the CS was submitted to the DEA laboratory by your affiant. The lab determined that the 24.5 grams of suspected methamphetamine was in fact methamphetamine.

19. On March 2, 2006, your affiant and other agents met with the same confidential and reliable source described above, hereafter referred to as the CS, regarding the purchase of one ounce of methamphetamine from Oscar

MARTINEZ-RAMIREZ.

20. During the meeting, the CS attempted to contact Oscar MARTINEZ-RAMIREZ at cellular telephone number. Agents provided the CS with $1,300.00 of official Government funds to purchase one ounce of methamphetamine from MARTINEZ-RAMIREZ. In addition, agents provided the CS with a tape recorder. The CS, the driver of the CS's vehicle and the CS's vehicle were searched for contraband and none was found. The CS rode to 134 Oak Way in Malvern, AL, the residence of MARTINEZ-RAMIREZ. The CS was under constant surveillance during this time.

21. At approximately 5:48 p.m., the CS arrived at the buy location. Oscar MARTINEZ-RAMIREZ advised the CS to return in ten minutes. The CS departed the buy location and agents maintained surveillance on the CS as well as the buy location. The CS returned to the buy location and MARTINEZ-RAMIREZ advised the CS that he had not had time to get the drugs and asked the CS to leave and return in a few minutes. The CS again departed the buy location and agents conducted surveillance on the CS and the buy location. The CS returned to the buy location at approximately 6:21 p.m. MARTINEZ-RAMIREZ exited the trailer at the buy location with approximately one ounce of suspected methamphetamine.

MARTINEZ-RAMIREZ gave the methamphetamine to the CS and the CS gave him $1,300.00. The CS departed the buy location at approximately 6:25 p.m.

22. The CS departed the buy and drove to the meet location in Slocomb, AL. The CS was under constant surveillance during this time. At the meet location, the CS turned the methamphetamine, a recorder and a transmitter over to agents. Agents searched the CS, his/her driver and the CS vehicle. No contraband was found during the search. The methamphetamine purchased by the CS was submitted to the DEA laboratory by your affiant. The lab determined that the 22.5 grams of suspected methamphetamine was in fact methamphetamine.

_____
DEVIN WHITTLE
DEA - Special Agent

Sworn to and subscribed before me
this 20th day of July 2006
at Montgomery, AL

_____
Delores R. Boyd
United States Magistrate Judge